CONNOLLY v. ROBERTSON

[151 N.C. App. 613 (2002)]

JOSEPH T. CONNOLLY and wife, PATRICIA A. CONNOLLY; PHILLIP CRAWFORD; WENDELL HAINLIN and wife, MARY E. HAINLIN; RICHARD C. HALFORD and wife, MELINDA HALFORD; RONALD HALLIBURTON and wife, SHIRLEY HALLIBURTON; PATRICK S. LLOYD; MARK S. MORRIS and wife, DARLENE A. MORRIS; S. JASON TRONCALE and wife, LINDA L. TRONCALE; M. D. WARD and wife, ANNETTE P. WARD, Plaintiffs v. COLIN ROBERTSON, Defendant

No. COA01-1047

(Filed 6 August 2002)

## 1. Easement— appurtenant—subdivision road—standing to enjoin use

Homeowners in a subdivision have an easement appurtenant to a road in the subdivision which gives them standing to seek to enjoin use of the road by an owner of an adjacent tract of land.

## 2. Highways and Streets— right to use of roads in subdivision—fee simple ownership—directed verdict

The trial court did not abuse its discretion by granting a directed verdict in favor of plaintiff homeowners on defendant's claim of right to the roads in the pertinent subdivision even though it excluded an attorney witness's testimony regarding defendant's alleged fee simple ownership of the roads, because the attorney witness based his expert opinion on inadequate facts and data.

## 3. Easements— by prescription—use of roads in subdivision

The trial court did not abuse its discretion by granting a directed verdict in favor of plaintiff homeowners on defendant's claim of right to the roads in the pertinent subdivision even though defendant alleges the acquisition of an easement by prescription, because: (1) absent evidence establishing that the prior adverse user's intentions in using the land were hostile, his use of the road is considered to be permissive; and (2) even assuming arguendo that the use of the road was adverse or hostile, defendant has still failed to meet his burden of providing a continuous and uninterrupted use of the property when defendant cannot establish privity between himself and the prior adverse user.

## 4. Easements— express grant—use of roads in subdivision

The trial court did not abuse its discretion by granting a directed verdict in favor of plaintiff homeowners on defendant's claim of right to the roads even though defendant alleges he had

an easement by express grant provided in a 1927 agreement, because: (1) the agreement grants an express easement only after the condition precedent of platting both pertinent properties is met; and (2) there was insufficient evidence that a previous platting of the properties was done or that it was approved by one of the named individuals.

Appeal by defendant from an order entered 25 October 2000 by Judge James L. Baker, Jr. in Buncombe County Superior Court. Heard in the Court of Appeals 16 May 2002.

*Ball Barden & Bell, P.A., by Stephen L. Barden, III, for plaintiff-appellees.*

*Ferikes & Bleynat, P.L.L.C., by Joseph A. Ferikes, for defendant-appellant.*

CAMPBELL, Judge.

Summer Haven is a platted and recorded subdivision located in Buncombe County. Plaintiffs are homeowners who own lots in sections "C" and "D" of Summer Haven. A circular road (hereinafter "Loop Road") serves these lots and is the subject of this appeal. Loop Road is a one-way road that has never been dedicated or used as a public way or accepted by any governmental body or agency. None of the lots acquired in Summer Haven gave plaintiffs a deed to Loop Road. Nevertheless, plaintiffs entered into a road maintenance agreement, recorded around 1987, whereby they agreed to "keep the routine maintenance [of Loop Road] going and any new pavement that needed to be done."

As a partner in Bee Tree Land Partnership, defendant is one of the owners of a 253.35-acre tract of land (hereinafter "Bee Tree Property") that is located to the northwest of and adjacent to Summer Haven. The Bee Tree Property has access to a public road and several other roads running throughout the tract. Despite this access to other roads, defendant, believing that he and the other owners of the Bee Tree Property had an easement appurtenant for ingress and egress across the roads within Summer Haven, began using Loop Road to access a portion of that property. Defendant based his belief on a 1927 agreement (recorded in the Office of Register of Deeds in and for Buncombe County in Deed Book 371, at page 378) between the Summer Haven predecessors, H. A. and Vera Coggins, and the Bee Tree Property predecessors, C. T. Hodges and Carolina Florida

Realty Company, that provided for a "full and unrestricted easement, right of way and perpetual right to the use of any and all of the streets . . . of the Summer Haven property[.]" However, defendant and the other owners purchased the Bee Tree Property without any assurances that they actually had a right-of-way over the Summer Haven roads and defendant's deed of conveyance did not mention such a right-of-way.

On 12 November 1998, plaintiffs filed a complaint in the Buncombe County District Court seeking to enjoin defendant from using the roads within Summer Haven, particularly Loop Road, to access the Bee Tree Property. On 8 February 1999, defendant filed an answer raising as a defense his "right to ingress, egress and regress across said roadways as a result of an express grant of easement and fee simple ownership, or in the alternative, a prescriptive easement, easement by dedication, an implied easement or an easement by estoppel."[1] The parties consented to the transfer of the case to the Buncombe County Superior Court on 14 April 1999.

Plaintiffs filed a motion for summary judgment and notice of hearing that was dated 26 August 1999. Thereafter, defendant also filed a motion for partial summary judgment on 11 January 2000. Both summary judgment motions were denied.

The trial on this matter was held on 16 October 2000. Plaintiffs presented evidence of their status as lot owners in Summer Haven. Additionally, plaintiffs presented expert testimony from a licensed attorney in North Carolina, Douglas Thigpen ("Attorney Thigpen"). Attorney Thigpen testified that in his opinion the 1927 agreement did not convey an interest in the roads to defendant or his predecessors in title. At the close of plaintiffs' evidence, defendant moved for directed verdict based, in part, on plaintiffs' lack of standing to make such a claim. This motion was denied.

Defendant presented evidence, which included expert testimony from another licensed attorney in North Carolina, John Parce ("Attorney Parce"). Attorney Parce testified that in his opinion the 1927 agreement did grant defendant an interest in the Summer Haven roads. Defendant's expert also attempted to present evidence that defendant had fee simple ownership of the Summer Haven roads pursuant to a 1999 deed received from William T. Penrod, Jr. ("Penrod, Jr."), allegedly the sole heir to the remaining property and roads in

---

1. Defendant also counterclaimed for malicious prosecution, but this claim was severed on 19 June 2000 and a separate trial was ordered.

Summer Haven. The trial court did not allow Attorney Parce to testify as to his opinion regarding ownership of the roads, but his opinion was heard by the court on *voir dire*. Afterwards, defendant presented additional evidence with respect to his having an interest in the roads based on a prescriptive easement and/or an easement by express grant.

At the close of defendant's evidence, plaintiffs moved for a directed verdict on all issues raised by defendant. The plaintiffs' motion was granted. On 25 October 2000, the trial court entered an order "prohibit[ing] and permanently enjoin[ing defendant] from using the loop road located in Sections C and D of Summer Haven Subdivision or the right-of-way shown on the plats of Sections C and D for access to property in which Defendant has an ownership interest located near or adjacent to the Summer Haven Subdivision." Defendant appeals.

## I. *Standing*

[1] By defendant's first assignment of error he argues plaintiffs lack standing to challenge his use of Loop Road. Specifically, defendant contends that since none of the plaintiffs' lots included a deed to Loop Road, their only legal rights are to use the road without interference but that plaintiffs have no right to enjoin him from using the road. We disagree.

In *Realty Co. v. Hobbs*, 261 N.C. 414, 135 S.E.2d 30 (1964), our Supreme Court addressed a similar situation involving a lot owner's right to the streets in the subdivision to which he or she had no ownership interest. The Supreme Court held, in pertinent part, that:

> Where lots are sold and conveyed by reference to a map or plat which represents a division of a tract of land into streets . . ., a purchaser of a lot or lots acquires the right to have the streets . . . kept open for his reasonable use . . . . It is said that such streets . . . are *dedicated* to the use of lot owners in the development. In a strict sense it is not a dedication, for a dedication must be made to the public and not to a part of the public. It is a right in the nature of an easement appurtenant. . . . [that] may not be extinguished, altered or diminished except by agreement or estoppel.

*Id.* at 421, 135 S.E.2d at 35-36 (citations omitted). An easement appurtenant "adheres to the land, cannot exist separate from it, and can be conveyed only by conveying the land involved; its use is limited to the

CONNOLLY v. ROBERTSON

[151 N.C. App. 613 (2002)]

land it was created to serve and cannot be extended to other land or other landowners without the consent of all owners of the easement." *Frost v. Robinson*, 76 N.C. App. 399, 400, 333 S.E.2d 319, 320 (1985) (holding that an easement appurtenant created only to serve lots owned by the plaintiff and the defendant could not be partially deeded by the defendant for use by the owner of an adjacent tract of land immediately behind the defendant's lots because that owner had no interest in the easement appurtenant). *See also Wood v. Woodley*, 160 N.C. 17, 75 S.E. 719 (1912).

Plaintiffs in the present case have an easement appurtenant in Loop Road. The property they own is "shown and described on plats recorded in the Buncombe County Registry of Deeds in Plat Book 7, at Page 24, 35, and 36 and in Plat Book 10, at Page 23." As such, plaintiffs have a right to ensure that the road is not extended to other lands (such as the Bee Tree Property) or used by other landowners (such as defendant) without their consent, especially when that use will likely alter or diminish plaintiffs' use. Thus, plaintiffs have the right to bring an action seeking to enjoin defendant's use of Loop Road if he does not have an interest in the road and is attempting to interfere with their use of it by making the road available to all the other owners of the 253.53-acre tract that comprises the Bee Tree Property. *See generally Frost*, 76 N.C. App. at 400-01, 333 S.E.2d at 320.

## II. *Directed Verdict*

With respect to defendant's three remaining assignments of error, they each present a different theory under which defendant attempted to prove he was legally entitled to use the Summer Haven roads, in particular, Loop Road. By these assigned errors defendant contends that the trial court erred in ultimately directing verdicts against him on the issues of (A) fee simple ownership, (B) easement by prescription, and (C) easement by express grant. We disagree as to all three assignments of error.

"A motion for directed verdict tests the sufficiency of the evidence to take [a] case to the jury." *Abels v. Renfro Corp.*, 335 N.C. 209, 214, 436 S.E.2d 822, 825 (1993). It is appropriately granted only when by looking at the evidence in the light most favorable to the non-movant, and giving the non-movant the benefit of every reasonable inference arising from the evidence, the evidence is insufficient for submission to the jury. *Streeter v. Cotton*, 133 N.C. App. 80, 514 S.E.2d 539 (1999). A trial court's decision to grant or deny a motion for directed verdict should not be disturbed absent an abuse of discre-

tion. *G.P. Publications, Inc. v. Quebecor Printing-St. Paul, Inc.*, 125 N.C. App. 424, 481 S.E.2d 674 (1997).

### A. *Fee Simple Ownership*

**[2]** By his second assignment of error, defendant argues the court erred in excluding the testimony of Attorney Parce regarding defendant's claim to ownership of the Summer Haven roads, which ultimately led to a directed verdict against him on the issue of fee simple ownership of the roads.

The general rule is that the party attempting to claim possession of land has the burden of proving that he has good title against the whole world or against the opposing party by estoppel. *Mobley v. Griffin*, 104 N.C. 112, 114, 10 S.E. 142, 142 (1889). *A prima facie* showing of title may be made by offering a connected chain of title to the party. *Id.* This connected chain of title can be established by relevant documentation, such as deeds, as well as through the opinions of expert witnesses who have based their opinions on this documentation or other evidence that may or may not be otherwise admissible. *See* 1 Henry Brandis, Jr., *Brandis on North Carolina Evidence*, § 136 (3rd ed. 1988) (providing that an admissible expert opinion "may be based upon the opinion of another expert or upon hearsay."). Nevertheless, if the expert's opinion is based on inadequate facts or data, it should be excluded. *Id.* It is generally well established that North Carolina courts are "afforded wide latitude of discretion when making a determination about the admissibility of expert testimony." *State v. Bullard*, 312 N.C. 129, 140, 322 S.E.2d 370, 376 (1984).

In the instant case, Attorney Parce testified that following several conveyances of lots in the Summer Haven subdivision, the remainder of the property was deeded to William T. Penrod, Sr. ("Penrod, Sr.") as trustee. Penrod, Sr. subsequently conveyed additional property in Summer Haven before dying and leaving any remaining but unspecified property not conveyed to his son, Penrod, Jr. Penrod, Jr. and his wife deeded this remaining property to defendant in 1999. However, the trial court did not allow Attorney Parce to further testify that, in his expert opinion, the Summer Haven roads were part of the remaining property deeded to defendant. We do not find that the court erred in doing so.

Attorney Parce attempted to base his expert opinion regarding defendant's fee simple ownership of the roads solely on (1) a deed whereby Penrod, Sr. conveyed property to the plaintiffs' predecessors in title while he was trustee, (2) a deed from Penrod, Jr. and his

wife to defendant, and (3) the affidavit of Penrod, Jr. stating that he was Penrod, Sr.'s sole heir and that his father owned all the roads in Summer Haven. However, Attorney Parce testified that, aside from the deed, there was nothing in the Buncombe County public records officially granting Penrod, Sr. authority to hold the property as trustee. Secondly, there was no conclusive documentation to identify Penrod, Jr. as his father's sole heir. The only documentation establishing this allegation was Penrod, Jr.'s own affidavit and an unprobated, unrecorded copy of Penrod, Sr.'s will that Attorney Parce did not have with him in court. Finally, Penrod, Jr. personally struck out of his affidavit all references to his father having retained any ownership in the Summer Haven roads. Thus, having based his expert opinion on inadequate facts and data, the trial court did not abuse its discretion in excluding Attorney Parce's expert opinion and directing a verdict on this issue.

## B. *Easement by Prescription*

[3] By defendant's third assignment of error he argues the trial court erred by directing a verdict on the issue of his acquisition of an easement by prescription. It is well recognized in North Carolina that in order to prevail on an issue of easement by prescription:

> '[A] plaintiff must prove the following elements by the greater weight of the evidence: (1) that the use is adverse, hostile or under claim of right; (2) that the use has been open and notorious such that the true owner had notice of the claim; (3) that the use has been continuous and uninterrupted for a period of at least twenty years; and (4) that there is substantial identity of the easement claimed through the twenty-year period.'

*Town of Sparta v. Hamm*, 97 N.C. App. 82, 86, 387 S.E.2d 173, 176 (1990) (citation omitted). Defendant has failed to meet his burden with respect to the first and third elements.

"North Carolina adheres to the presumption of permissive use which plaintiffs must rebut in order to prevail on the element of adversity, hostility and claim of right." *Id.* "A 'hostile' use is simply a use of such nature and exercised under such circumstances as to manifest and give notice that the use is being made under claim of right." *Dulin v. Faires*, 266 N.C. 257, 261, 145 S.E.2d 873, 875 (1966). In the case *sub judice*, Peter Medure ("Medure") acquired ownership of the Bee Tree Property from H. A. Coggins in 1969. Two nephews of Medure testified that they used Loop Road throughout Medure's own-

ership of the land even after being told not to do so by a Summer Haven property owner. However, even though this testimony may indicate that each nephew's state of mind in using the road was adverse or hostile, it does not provide any insight into Medure's state of mind. Therefore, absent evidence establishing Medure's intentions in using the land were hostile, we must consider his use of the road to be permissive.

Nevertheless, assuming *arguendo* that Medure's use of the road was adverse or hostile, defendant has still failed to meet his burden with respect to the third element required to establish an easement by prescription. The third element requires that there be a continuous and uninterrupted use of the property by the party claiming a possessory interest for a period of at least twenty years. The possessions of successive adverse users in privity may be "tacked" with prior adverse users so as to aggregate this prescriptive twenty-year period. Tacking is a permissible legal principle between a successive and prior adverse user when there is no hiatus or interruption in the possession. *See Beam v. Kerlee*, 120 N.C. App. 203, 212, 461 S.E.2d 911, 918 (1995).

Here, defendant contends that he has met his burden regarding this element because, as the successive adverse user of Loop Road, defendant can tack his use with that of Medure, the prior adverse user of the road. However, when Medure died in 1991, Medure's widow acquired ownership of the Bee Tree Property. In 1995, she deeded title to that property to Bee Tree Land Partnership (and thus defendant). Defendant offered no evidence that Medure's widow used Loop Road or claimed prescriptive rights to any of the Summer Haven roads between the years of 1991 and 1995. Therefore, defendant cannot establish privity between himself and Medure because the absence of such evidence clearly indicates an interruption in the use of Loop Road over the last twenty years. Thus, the trial court did not err in granting plaintiffs' motion for a directed verdict on this issue.

### C. *Easement by Express Grant*

[4] By his final assignment of error, defendant argues the trial court erred by directing a verdict against him on the issue of easement by express grant.

Our Supreme Court has held that:

'No particular words are necessary to constitute a grant, and any words which clearly show the intention to give an easement,

which is by law grantable, are sufficient to effect that purpose, provided the language is certain and definite in its terms. . . . The instrument should describe with reasonable certainty the easement created and the dominant and servient tenements.'

*Hensley v. Ramsey*, 283 N.C. 714, 730, 199 S.E.2d 1, 10 (1973) (quoting 28 C.J.S. *Easements* § 24). In the case at bar, defendant points to the 1927 agreement between the original predecessors of Summer Haven and Bee Tree Property, which stated the two properties were to be "platted and subdivided under the direction and approval of C. T. Hodges and H. A. Coggins, they to determine the size of lots, the streets, etc." The agreement further stated that:

Whenever the said platting shall have been done, it is hereby mutually agreed between the parties of the first part and Carolina Florida Realty Company, that full and unrestricted easement, right of way and perpetual right to the use of any and all of the streets and alleys marked out upon any of the sections of the Summer Haven property, and all of the streets and alleys laid out upon the platted portions of the lands belonging to the parties of the first, shall be given to the said H. A. Coggins and to the Carolina Florida Realty Company[.]

Based on our reading of the agreement, we conclude that it grants an express easement to the Bee Tree Property owners only after a condition precedent is met.

In *Cargill, Inc. v. Credit Assoc., Inc.*, 26 N.C. App. 720, 217 S.E.2d 105 (1975), this Court defined "conditions precedent" as:

'[T]hose facts and events, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available.'

*Id.* at 722-23, 217 S.E.2d at 107 (quoting 3A Arthur L. Corbin, *Corbin on Contracts* § 628 (1960)). Conditions precedent are not favored by the law. *Jones v. Realty Co.*, 226 N.C. 303, 37 S.E.2d 906 (1946). Thus, absent clear and plain language, provisions of a contract will ordinarily be construed as a promise instead of a condition precedent. *Stewart v. Maranville*, 58 N.C. App. 205, 206, 292 S.E.2d 781, 782 (1982). However, the use of language such as "when," "after," and "as soon as" clearly indicates that a promise will not be performed except upon the happening of a stated event, i.e., a condition precedent. *Craftique, Inc. v. Stevens and Co., Inc.*, 321

N.C. 564, 567, 364 S.E.2d 129, 131 (1988) (citing *Jones*, 226 N.C. at 306, 37 S.E.2d at 908).

Here, the condition precedent in the 1927 agreement stated that *whenever* both properties were subdivided into plats under the direction and approval of C. T. Hodges and H. A. Coggins, an easement to the Summer Haven roads would be granted. H. A. Coggins subsequently died in 1948. The only evidence defendant offered that the platting was done before his death was a notation on one of defendant's exhibits (showing a plat of both properties) that stated, in part: "Scale: 1" = 500'—22 October 1935[,] Revised 1 February 1950[.]" This single notation referencing a date prior to H. A. Coggins' death is insufficient to establish that a previous platting of the properties was done, much less, that the platting was approved by H. A. Coggins. Thus, the trial court did not abuse its discretion in directing a verdict in favor of plaintiffs because there was insufficient evidence to allow submission of this issue to the jury.

Accordingly, for the aforementioned reasons, plaintiffs did have standing to challenge defendant's use of the roads in the Summer Haven subdivision. Also, the trial court did not err in granting a directed verdict in favor of plaintiffs on defendant's claim of right to the roads based on fee simple ownership, easement by prescription, and/or easement by express grant.

Affirmed.

Judges TIMMONS-GOODSON and LEWIS concur.